Joseph E. Sarachek, (NY Bar No. 2163228) *pro hac vice*
Zachary E. Mazur, (NY Bar No. 5706726) *pro hac vice*
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
joe@saracheklawfirm.com, (646) 517-5420
zachary@saracheklawfirm.com (646) 519-4396
*Special Litigation Counsel for Lenard E. Schwartzer, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>WELSCORP, INC.<br><br>Debtor. | Case No. BK-S-19-18056-ABL **(Lead Case)**<br><br>**Consolidated under BK-S-19-18056-ABL with:**<br><br>Case No. BK-S-20-11597-ABL<br>Case No. BK-S-20-11211-ABL<br>Case No. BK-S-20-11215-ABL<br><br>Chapter 7 |
| ☐ Affects Einstein Sports Advisory Ltd.<br>☐ Affects QSA LLC<br>☐ Affects Wellington Sports Club, LLC<br>☐ Affects Welscorp, Inc.<br>☒ Affects All Debtors | |
| LENARD E. SCHWARTZER, in his capacity as CHAPTER 7 TRUSTEE<br><br>Plaintiff,<br><br>vs.<br><br>BRYAN CENTOLA and OOMPH MODE, INC.<br><br>Defendants. | **ADVERSARY PROCEEDING**<br><br>Case No. BK-S-21- |

**ADVERSARY COMPLAINT FOR AVOIDANCE AND RECOVERY OF TRANSFERS**

Lenard E. Schwartzer, in his capacity as Chapter 7 Trustee, alleges as follows:

**NATURE OF THE ACTION**

1. At least since August 2014 until shortly before a number of creditors filed their involuntary petitions for Chapter 7 on December 20, 2019, (the "Initial Petition Date")

Debtors Welscorp, Inc. and its co-debtor affiliates and principals (collectively, the "Debtors") were operated as a Ponzi scheme. As part of this fraud, Debtors John F. Thomas and Thomas Becker utilized the Debtor entities to raise nearly $30 million from approximately 600 investors (collectively, "Investors") as participants in ostensible online sports betting contracts.

2. Those Investors, many of whom were unsophisticated, often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose their entire investment. The quality of the Investors' entire lives will likely be substantially and adversely affected by the fraud perpetrated by Thomas, Becker, the Debtors and their agents.

3. The Debtors transferred Investors' funds to various third parties for the purposes of perpetuating the fraud. Bryan Centola ("Centola") and his entity Oomph Mode, Inc. ("Oomph", collectively "Defendants"), on information and belief, earned generous compensation for finding new investors for the Debtors, as well as other returns.

4. The purpose of this lawsuit is to avoid and recover monies previously paid to Defendants by reason of these activities, on the grounds that such payments were preferential, actually fraudulent, and/or constructively fraudulent.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this adversary proceeding pursuant to the provisions of 28 U.S.C. §§ 157 and 1334. This action is commenced pursuant to §§ 542, 544, 547, 548, and 550 of the bankruptcy code and Rule 7001 of the Rules of Bankruptcy Procedure.

6. This action is a core proceeding under 28 U.S.C. § 157(b)(2). This action relates to the bankruptcy cases *In re Welscorp, Inc., et al.* Case No: BK-S-19-18056-ABL (lead case) in

the United States Bankruptcy Court for the District of Nevada. Venue is proper under 28 U.S.C. § 1409(b) because the amount being sought is over $25,000.

7. To the extent that the Trustee asserts claims under § 544(b) of the bankruptcy code, the Trustee is informed and believes and thereon alleges there exists in this case one or more creditors, holding unsecured claims allowable under § 502 of the bankruptcy code or that are not allowable only under § 502(e) thereof, which can avoid the respective transfers or obligations under Nevada or other applicable law.

8. Plaintiff hereby consents to the entry of a final order or judgment by the bankruptcy court, pursuant to Fed R. Bankr. P.7008(a) and Local Rule 7008.

**PARTIES**

9. Plaintiff is Lenard E. Schwartzer, in his capacity as Chapter 7 Trustee in *In re Welscorp, Inc., et al.* Case No: BK-S-19-18056-ABL (lead case) in the United States Bankruptcy Court for the District of Nevada (the “Bankruptcy”), filed on December 20, 2019.

10. The Bankruptcy substantively consolidates the estates of Welscorp Inc. (“Welscorp”), Einstein Sports Advisory Ltd. (“Einstein”), QSA LLC (“QSA”), Wellington Sports Club LLC (“Wellington”), Vegas Basketball Club LLC (“Vegas Basketball”), Vegas Football Club LLC (“Vegas Football”), Boston Biometrics LLC (“Boston Biometrics”), Sports Psychometrics LLC (“Sports Psychometrics”), ESA Ltd., No-More-Bad-Hires, Inc. (“No-More-Bad-Hires”), Thomas Becker and John F. Thomas, III (aka Jonathan West) (collectively, the “Debtors”).

11. Debtors Welscorp, QSA, Einstein, Boston Biometrics, Sports Psychometrics LLC, ESA Ltd., and No-More-Bad-Hires are Nevada limited liability companies, and Chapter 7 debtors herein.

12. Debtor Wellington is a Washington State limited liability company and a Chapter 7 debtor herein.

13. Debtors Vegas Basketball and Vegas Football are Wyoming limited liability companies, and Chapter 7 debtors herein.

14. Debtors John F. Thomas and Thomas Becker, both Chapter 7 debtors herein, are individuals residing in the State of Nevada.

15. On information and belief, Defendant Centola is an individual residing in Los Angeles, California.

16. On information and belief, Defendant Oomph is a corporation formed under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada.

## **FACTUAL BACKGROUND**

### ***The Fraud***

17. From at least August 2014 through the present, and using nearly a dozen entities, Debtor principals John F. Thomas, III (aka John Rodgers, Jonathan West, John Frank and John Marshall) and Thomas Becker have raised at least $29.5 million from over 600 investors in more than 40 states.

18. John Thomas and Becker raised the funds by offering investors pooled investment contracts whereby they obtained the opportunity to share in purported profits generated from a proprietary sports betting system. Investors were enticed with the possibility of extraordinary returns. In reality, however, the entities used less than 15% of the capital raised to bet on sporting events. The rest was squandered and stolen by the Debtors' principals.

19. On August 30, 2019, the Securities and Exchange Commission ("SEC") filed a civil complaint in the U.S. District Court, District of Nevada, (the "SEC Action," *Securities and Exchange Commission v. John Thomas et al*. Case no. 19-cv-01515, Hon. Andrew. P. Gordon)

against Thomas, Becker, the Debtors (except No-More-Bad-Hires), and other related parties, alleging multiple securities violations.

20. In that complaint, included here as **Exhibit A**, the SEC describes a fraudulent Ponzi scheme whereby Thomas and Becker used the entities for their own personal gain.

21. An SEC forensic accountant discovered that only a small fraction of investor funds was actually used for sports betting. A larger part was used either to pay commissions to sales agents (like Defendants), to pay Thomas and Becker's personal expenses like rent and home renovations, siphoned off to entities like NMBH, or used to make Ponzi payments to earlier investors. (Decl. of Deborah Russell in Supp. of the SEC's Motion for Preliminary Injunction, ¶¶ 35-39, enclosed here as **Exhibit B**, without accompanying exbibits).

22. On December 4, 2019, Judge Gordon granted the SEC's motion for a preliminary injunction against the Debtors, enjoining them from defrauding more investors and placing an immediate freeze on their monies and assets. The asset freeze included non-party No-More-Bad-Hires. Since then, the SEC has obtained default and summary judgements against all defendants in that matter.

23. On December 20, 2019, three defrauded Investors in Welscorp filed an involuntary petition for Chapter 7 relief against that entity in the U.S. Bankruptcy Court for the District of Nevada, initiating the Bankruptcy. [Bankruptcy Dkt. No. 1] The original Bankruptcy matter would eventually be substantively consolidated with those of the rest of the Debtors on June 29, 2020. [Bankruptcy Dkt. No. 89].

24. On October 27, 2020, a Grand Jury indicted Debtors' principals John Thomas and Becker for conspiring to commit wire fraud and thirteen counts of wire fraud. (Indictment, enclosed here as **Exhibit C**). In the Indictment, the Grand Jury alleges that Thomas and Becker ran a Ponzi scheme. *Id.* ¶ 2.b.

25. Despite the success of the SEC action, despite the Indictment and despite the relief granted by the Bankruptcy, Investors in the Debtor entities have been left destitute, many having lost their life savings. The Trustee has not been able to locate any substantial assets of the Debtors. It is possible that the only assets of the consolidated Bankruptcy estate consist of causes of action against transferees, similar to the one described in the instant complaint.

***The Transfers***

26. Defendants were among the top transferees in this fraud, having received regular transfers starting in late 2017 through the Initial Filing Date. A schedule of the known transfers made to each of the Defendants in the four years prior to the Initial Filing Date is included herein as **Exhibit D**.

27. On information and believe, Defendants received money from the Debtors as broker commissions for bringing new money into the fraudulent scheme, as well as other compensation. Defendant Centola sometimes used his entity Oomph to receive compensation.

28. Plaintiff is informed and believes and thereupon alleges that within the four years preceding the Initial Petition Date, Defendant Centola received transfers totaling not less than $20,000 (the “Centola Transfers”), including commission payments and other compensation.

29. Plaintiff is informed and believes and thereupon alleges that within the two years preceding the Initial Petition Date, Defendant Oomph received transfers totaling $10,405.98 from the Debtors (the “Oomph Two-Year Transfers”), including commission payments and other compensation.

30. Plaintiff is informed and believes and thereupon alleges that within the four years preceding the Initial Petition Date, Defendant Oomph received transfers totaling $35,405.98

from the Debtors (the "Oomph Four-Year Transfers" [1] and, collectively with the Oomph Two-Year Transfers, the "Oomph Transfers"), including commission payments and other compensation.

**FIRST CLAIM FOR RELIEF**

***Avoidance and Recovery of Actual Intent Fraudulent Transfers — Bankruptcy Code***

31. Plaintiff realleges and incorporates herein Paragraphs 1 through 30, as if fully set forth herein.

32. The Oomph Two-Year Transfers constituted transfers of the Debtors' property.

33. The Oomph Two-Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the services allegedly provided in exchange for such transfers (if any) perpetuated a Ponzi scheme.

34. The Oomph Two-Year Transfers were made to or for the benefit of Defendant.

35. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Oomph Two-Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Oomph Two-Year Transfers be set aside, (c) recovering such Oomph Two-Year Transfers or the value thereof from Defendant for the benefit of the Bankruptcy Estate, and (d) declaring the Oomph Two-Year Transfers to have been derived from a Ponzi Scheme which was fraudulent for purposes of 11 U.S. Code § 523.

**SECOND CLAIM FOR RELIEF**

***Avoidance and Recovery of Constructive Fraudulent Transfers -— Bankruptcy Code***

[1] The Centola Four-Year Transfers are inclusive of the Centola Two-Year Transfers, but Plaintiff does not seek to recover the same sum more than once.

36. Plaintiff realleges and incorporates herein Paragraphs 1 through 35 as if fully set forth herein.

37. The Oomph Two-Year Transfers constituted transfers of the Debtors' property.

38. The Oomph Two-Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that Debtors would incur, debts beyond their ability to pay as such debts matured.

39. The Oomph Two-Year Transfers were made to or for the benefit of Defendant.

40. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Oomph Two-Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Oomph Two-Year Transfers be set aside, and (c) recovering such Oomph Two-Year Transfers or the value thereof from Defendant Oomph for the benefit of the Bankruptcy Estate.

## THIRD CLAIM FOR RELIEF:

***Avoidance and Recovery of Actual Intent Voidable Transactions - State Law***

41. Plaintiff realleges and incorporates herein Paragraphs 1 through 40, as if fully set forth herein.

42. The Centola Transfers, as well as the Oomph Transfers, constituted transfers of the Debtors' property.

43. The Centola Transfers and the Oomph Transfers, were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the services allegedly provided in exchange for such transfers (if any) perpetuated a Ponzi scheme.

44. The Centola Transfers and the Oomph Transfers, were made to or for the benefit of each respective Defendant.

45. Each Debtor that made any of the Centola Transfers and the Oomph Transfers, had at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

46. The Centola Transfers and the Oomph Transfers are avoidable under applicable law - Nev. Rev. Stat. Ann. § 112.180(1)(a) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act - by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

47. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Centola Transfers and the Oomph Transfers free and clear of any claimed interest of Defendants, (b) directing that the Centola Transfers and the Oomph Transfers be set aside, (c) recovering such Centola Transfers and the Oomph Transfers or the value thereof from the respective Defendants for the benefit of the Bankruptcy Estate, and (d) declaring the Centola Transfers and the Oomph Transfers to have been derived from a Ponzi Scheme which was fraudulent for purposes of 11 U.S. Code § 523.

## **FOURTH CLAIM FOR RELIEF**

***Avoidance and Recovery of Constructive Voidable Transactions - State Law***

48. Plaintiff realleges and incorporates herein Paragraphs 1 through 47, as if fully set forth herein.

49. The Centola Transfers and the Oomph Transfers constituted transfers of the Debtors' property.

50. The Centola Transfers and the Oomph Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

51. The Centola Transfers and the Oomph Transfers were made to or for the benefit of each respective Defendant.

52. At the time of and/or subsequent to each of the Centola Transfers and the Oomph Transfers, each Debtor that made any of those transfers had at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

53. The Centola Transfers and the Oomph Transfers are avoidable under applicable law — Nev. Rev. Stat. Ann. § 112.180(1)(a) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

54. As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Centola Transfers and the Oomph Transfers free and clear of any claimed interest of Defendant, (b) directing that the Centola Transfers and the Oomph Transfers be set aside, and (c) recovering such Centola Transfers and the Oomph Transfers, or the value thereof from the respective Defendants for the benefit of the Bankruptcy Estate.

//

//

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter judgment:

(1) On all claims for relief, (a) avoiding the Centola Transfers free and clear of any interest of Defendants, (b) directing that the Centola Transfers be set aside, and (c) ordering Centola to pay to Plaintiff $20,000, and (d) declaring the Centola Transfers to have been derived from a Ponzi Scheme which was fraudulent for purposes of 11 U.S. Code § 523.

(2) On all claims for relief, (a) avoiding the Oomph Transfers free and clear of any interest of Defendants, (b) directing that the Oomph Transfers be set aside, and (c) ordering Oomph to pay to Plaintiff $35,405.98, and (d) declaring the Oomph Transfers to have been derived from a Ponzi Scheme which was fraudulent for purposes of 11 U.S. Code § 523.

(3) On all claims for relief, awarding Plaintiff prejudgment interest as permitted by law, costs of suit, and such other and further relief as is just and proper.

Dated this 10th day of November 2021.

*/s/ Zachary E. Mazur*
Joseph E. Sarachek, (NY Bar No. 2163228) *pro hac vice*
Zachary E. Mazur, (NY Bar No. 5706726) *pro hac vice*
Sarachek Law Firm
670 White Plains Road #PH
Scarsdale, New York 10583
*Special Litigation Counsel for*
*Lenard E. Schwartzer, Trustee*